# IN THE COURT OF APPEALS OF IOWA

No. 18-1820
Filed August 21, 2019

**IN RE THE MARRIAGE OF LORI ANN LYON AND STEVEN JAMES LYON**

**Upon the Petition of**
**LORI ANN LYON, n/k/a LORI ANN HARDMAN,**
 Petitioner-Appellee,

**And Concerning**
**STEVEN JAMES LYON,**
 Respondent-Appellant.

_____

  Appeal from the Iowa District Court for Hardin County, James A. McGlynn, Judge.

  The father appeals from the court's modification of the parties' dissolution decree, arguing the court should have changed the parenting time schedule to give him even more time with the parties' daughter. **AFFIRMED.**

  Dorothy L. Dakin of Kruse & Dakin, L.L.P., Boone, for appellant.

  Larry W. Johnson of Walters & Johnson, Iowa Falls, for appellee.

  Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

Steven Lyon appeals from the district court's modification of his and Lori Lyon's[1] previously modified dissolution decree. He asks us to affirm the district court's change of the holiday schedule but otherwise argues the court should have changed the parenting-time schedule to give him even more time with the parties' child, C.L. In response, Lori asks that we affirm the district court's modification and award her $2500 in appellate attorney fees.

## I. Background Facts and Proceedings.

Steven and Lori dissolved their marriage by stipulated decree in 2011. The decree provided they would share legal custody of C.L., who was born in 2008, and Lori would have physical care of C.L.

Then, in 2013, the parties modified their decree by stipulation. By agreement, Steven received two weeks parenting time with C.L. in the summer— one week each in June and July. Additionally, his weekend time with C.L. was extended from alternating weekends lasting Friday evening through Sunday evening to alternating weekends lasting Thursday evening through Sunday evening.

Steven filed a petition for a second modification—the one at issue now—in December 2017. He asked for a change in the holiday schedule, two additional weeks with C.L. during her summer vacation from school, extending his weekend

---

[1] Lori is now known as Lori Hardman.

time to include Sunday overnights, and overnights every Thursday—not just on the weeks he has weekend time with C.L.[2] Lori resisted the modification.

The matter was tried to the district court in September 2018. At the time, both Steven and Lori had remarried and had two additional children and one additional child, respectively. According to Steven's testimony, their homes were twenty-three miles apart. Steven lived outside of the school district C.L. attended, but he drove her to school and activities when she had overnights with him and it had never been a problem. The middle school C.L. is expected to attend is in a separate town—one further away from Steven's home, which he estimated is approximately a thirty to thirty-five minute drive. C.L. is involved in several activities and enjoys the time she spends in both Steven's and Lori's homes.

Steven maintained there had been a change in circumstances surrounding his health. He testified that shortly after the parties began dissolution proceedings, in 2011, he broke his femur and learned he had bone cancer. In September 2011 he had surgery to replace his femur and, in May 2012, a second surgery to replace his knee, part of his femur, and part of his tibia. The stipulated modification was entered in July 2013, during which Steve was still undergoing physical therapy and attending regular doctor appointments. He was declared cancer free in October 2016. Steven testified about his increased mobility and his improved outlook regarding his chances of survival.

---

[2] In his petition for modification, Steven asked the court to change the physical-care arrangement to one of joint physical care or, alternatively, to give him additional parenting time with C.L. The court concluded Steven had not met his burden to change the physical-care arrangement; Steven does not challenge this conclusion on appeal.

The district court modified the parenting schedule for holidays but otherwise denied Steven's request for modification. Steven appeals.

## II. Standard of Review.

"We review an order modifying a decree for dissolution of marriage de novo." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We note that "[p]rior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004).

## III. Discussion.

### A. Modification of Scheduled Parenting Time.

Generally, the parent seeking to modify the parenting schedule "must establish by a preponderance of evidence that there has been a material change in circumstances since the [last modification] and that the requested change in visitation is in the best interests of the child[]." *In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994); *see also In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995) (stating that the party who seeks the change must established the change in circumstances "since the entry of the decree *or its last modification*" (emphasis added)). But here, the district court determined the parties could modify the parenting-time schedule without first establishing a material change in circumstances. The court relied upon this sentence in the parties' stipulated decree: "The parties agree that it is in [C.L.'s] best interest to have continued contact with both parties and they shall modify the visitation schedule in a fashion that will allow both of them to properly parent [C.L.]"

It is possible—though discouraged and disfavored—for the district court to retain jurisdiction to modify divorce decrees without a showing of change of circumstances. *In re Marriage of Schlenker*, 300 N.W.2d 164, 165 (Iowa 1981). But "[o]nly when the decree unequivocally provides for later trial court review without the necessity of showing a change of circumstances will we say this was the trial court's intent." *In re Marriage of Vandergaast*, 573 N.W.2d 601, 603 (Iowa Ct. App. 1997). Here, the language relied upon by the modification court does not contain an explicit statement relieving the parties of the need to show a change of circumstances in the future, so it cannot be the basis for the modification.

That being said, Lori does not challenge on appeal the district court's modification of the parties' holiday schedule. And at trial, she testified there needed to be "some changes to the holiday schedule because obviously it's not working. It's not satisfactory." As neither party contests the modification of the holiday schedule, we do not review it. *See King v. State*, 818 N.W.2d 1, 49 (Iowa 2012) (Cady, C.J., dissenting) (stating we only reach issues when a party to the legal actions "has fully briefed the issues on appeal, and has asked us to reach the issues on appeal").

We consider whether Steven met his burden for modification of the parenting schedule to include additional parenting time in the summer and additional overnights. As stated before, as the parent seeking to modify the parenting schedule, Steven "must establish by a preponderance of evidence that there has been a material change in circumstances since the [last modification] and that the requested change in visitation is in the best interests of the child[]."

*Salmon*, 519 N.W.2d at 95 (Iowa Ct. App. 1994). "'The degree of change required in a modification of visitation rights is much less than the change required in a modification for custody.'" *Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994). "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Salmon*, 519 N.W.2d at 96. "However, the change of circumstances still must be beyond the contemplation of the court at the time of the decree." *In re Marriage of Hute and Baker*, No. 17-0046, 2017 WL 3283382, at *3 (Iowa Ct. App. Aug. 2, 2017)

We understand Steven may have subjectively believed he would not survive cancer and that his mobility has greatly improved since summer 2013—when the previous modification was entered. But we agree with the district court that Steven's improvement in health is not a material change that was beyond the contemplation of the district court at the time of the previous modification. As Steven admitted at trial, his diagnosis and subsequent medical needs never caused him to miss a visit with C.L. and he was still able to parent her during that time, albeit somewhat differently. He also continued to lead a relatively active life in the time following his diagnosis, as he testified he began driving race cars in 2012 and was still doing so at the time of the 2018 trial.

We agree with the district court that Steven did not meet his burden to modify the parenting-time schedule further.

**B. Appellate Attorney Fees.**

Lori asks that we award her $2500 in appellate attorney fees. We have discretion to award appellate attorney fees "to the prevailing party in an amount

deemed reasonably by the court" in a modification proceeding. Iowa Code § 598.36 (2017); *see also In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). In considering Lori's request, we consider her needs, Steven's ability to pay, and whether Lori was obligated to defend the district court's decision on appeal. *See Maher*, 596 N.W.2d at 568.

Having considered the factors, we decline Lori's request.

**IV. Conclusion.**

For the reasons stated herein, we affirm the district court's ruling on Steven's petition for modification and decline Lori's request for appellate attorney fees.

**AFFIRMED.**